UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANELLO FENCE, LLC. | : | Civil Action No.: |
| Plaintiff, | : | **COMPLAINT** |
| vs. | : | REQUESTING: (A) MONETARY RELIEF FOR VIOLATION OF: |
| VCA SONS, INC. d/b/a FREEDOM FENCE, CLIPPER MAGAZINE, INC., AND SHOPPER'S GUIDE, LLC. | : | (1) TRADEMARK INFRINGEMENT OF A REGISTERED MARK UNDER THE LANHAM ACT; |
| Defendant(s). | : | (2) MISREPRESENTATION, FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING, AND UNFAIR COMPETITION UNDER THE LANHAM ACT |
| | : | (3) CONTRIBUTORY TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1051 |
| | : | (4) COMMON LAW FALSE ADVERTISING AND UNFAIR COMPETITION |
| | : | (5) UNFAIR COMPETITION IN VIOLATION OF N.J. Stat. §56:4-1 |
| | : | (6) UNJUST ENRICHMENT |
| | : | (7) TORTIOUS INTERFERENCE |
| | | (DEMAND FOR JURY TRIAL) |

**INTRODUCTION**

1.  Plaintiff Anello Fence, LLC ("Plaintiff"), by its counsel The Ingber Law Firm, asserts causes of action including trademark infringement, misrepresentation, false designation of origin, contributory trademark infringement, false advertising, unfair competition, unjust enrichment, and tortious interference with prospective business advantage against Defendants VCA Sons, Inc. d/b/a Freedom Fence, Clipper Magazine, Inc., Shopper's Guide, LLC, ("Defendants"). These causes of action arise from Defendants' continued use of the Plaintiff's ANELLO®

1

Trademark Registration through advertising which constitutes a course of misrepresentations, unfair business practices, trademark infringement, and other deceptive acts of Defendant by trading on Plaintiff's ANELLO® Trademark, reputation, and goodwill. Defendants have willfully engaged in trademark infringement in a blatant attempt to confuse the consuming public despite knowing of Plaintiff's existence. Most egregiously, Defendant VCA Sons, Inc. d/b/a/ Freedom Fence engages in its infringing activity a mere three-quarters (3/4) of a mile from Plaintiff's showroom, maximizing the potential for consumer confusion. Defendant VCA Sons, Inc. d/b/a/ Freedom Fence's intent is to flagrantly misrepresent an affiliation with and pass the services of Defendant VCA Sons, Inc. d/b/a/ Freedom Fence off as Plaintiff's. In fact, this is just another instance in a pattern of behavior whereby shareholders of the Defendant VCA Sons, Inc. d/b/a/ Freedom Fence, whose surname is Anello, seek to use the Plaintiff's ANELLO® Trademark to benefit themselves. Plaintiff seeks compensatory damages in an amount not less than $1,000,000 and punitive damages not less than $3,000,000.

2.      Through this course of conduct, Defendants have committed numerous violations of New Jersey State and Federal law, including (1) Trademark Infringement of a registered mark under the Lanham Act; (2) misrepresentation, false designation of origin, false advertising, and unfair competition under the Lanham Act; (3) contributory trademark infringement in violation of 15 U.S.C. § 1051, *et seq.* (4) common law false advertising and unfair competition; (5) unfair competition in violation of N.J. Stat. §56:4-1; (6) unjust enrichment; and (7) tortious interference with prospective business advantage.

**PARTIES**

3.      Plaintiff is a New Jersey Limited Liability Company with its principal place of business located at 50 Route 23 North, Pequannock, NJ 07440.

4. Plaintiff is a fence contractor that sells, installs, maintains and manufactures both residential and commercial fences including, but not limited to: aluminum, PVC, chain link, wood, bamboo and pool barrier fences.

5. Plaintiff's indoor showroom contains numerous exemplars of the fencing manufactured and installed by Plaintiff, as well as information regarding pricing and installation for consumers.

6. On information and belief, Defendant VCA Sons, Inc d/b/a Freedom Fence ("Freedom Fence") is a New Jersey Corporation with its principal place of business located at 340 Route 23 North, Pompton Plains, NJ.

7. On information and belief, Defendant Clipper Magazine, Inc. is a Pennsylvania Corporation with its principal place of business located at 3708 Hempland Road, Mountville, PA 17554.

8. On information and belief, Defendant Shopper's Guide, LLC is a New Jersey Limited Liability Company with its principal place of business located at 10 Teak Road, Wayne, New Jersey 07470.

9. Defendant Freedom Fence opened its business in 2004.

10. Defendant Freedom Fence is a contractor that manufactures, sells and installs residential and commercial fences. Defendant's store is located three-quarters (3/4) of a mile from Plaintiff's indoor showroom.

11. Defendant Clipper Magazine ("Clipper Magazine") is a free magazine specializing in local advertising that makes their publication available via regular mail, its website (www.doubletakeoffers.com) and mobile applications.

12. Defendant Shopper's Guide ("Shopper's Guide") is a direct mail marketing publication that delivers free coupons to consumers in Bergen, Essex, Morris and Passaic counties via both regular mail and its website (www.njshoppersguide.com).

## JURISDICTION AND VENUE

13. Jurisdiction is based on 28 U.S.C. § 1331, Plaintiff's claims under 15 U.S.C. §§ 1114 & 1125, and pendant and related State law claims, all arising from Defendant's wrongful and unlawful use of Plaintiff's trademark(s), and over the remaining claims under 28 U.S.C. §§ 1338(b) and 1367(a).

14. Venue is proper within this District based on 28 U.S.C. § 1391(b) because all parties transact business within this district, and this is the only District in which a substantial part of the events or omissions giving rise to the claims set forth herein occurred.

## FACTS COMMON TO ALL COUNTS

**Plaintiff ANELLO**

15. S. Steven Anello is Plaintiff's Managing Member. Steven Anello's father, Emilio Anello, Sr., began the Anello Bros. business, a fence contracting business, in 1963. This business was located at 340 Route 23 North, Pompton Plains, NJ.

16. Steven Anello's grandfather, Salvatore Anello, and uncle, Vincenzo Anello, Sr. both worked for Emilio Anello. Vincenzo Anello, Sr. later received a minority stock ownership in the Anello Bros. business.

17. In 2006, Vincenzo Anello, Sr. abandoned the "Anello" mark.

18. In 2006, S. Steven Anello's father retired, and all rights to the business and the "ANELLO" mark were transferred to the Plaintiff.

19. Anello Fence was formed on or about March 15, 2007

4

20. Plaintiff is a fence contractor that sells, installs, maintains and manufactures both residential and commercial fences including, but not limited to: aluminum, PVC, chain link, wood, bamboo and pool barrier fences under its service mark "ANELLO®".

21. Plaintiff maintains an active online presence, including a website (www.anellofence.com) and Facebook page (https://www.facebook.com/#!/pages/Anello-Fence/127335617283165?fref=ts).

22. Plaintiff is the exclusive owner of all rights, title, and interest to the following United State trademark (hereinafter the "ANELLO® Trademark"):

> a. ANELLO, U.S. Registration No. 3,988,606 in International Classes 37 and 40 for Installation and maintenance of fences, namely, barricades, basketweave, board on board, decorative, flat top gate, garden, grapestake, hi-low dog ear, lattice/lattice tops, lead free, non-climbable, ornamental, porch rail, privacy, razon ribbon, round rail, round top gate, security, shadow weave, slatted, snow, split rail, stockade and temporary construction, chain link fences, non-metal wire fences, wire mesh/barbed wire fences, vinyl fences, vinyl coated fences, wood fences, PVC fences, picket fences, arbors and trellises made of wood, concrete retaining walls, concrete bollards, guard rails, hand rails, pergolas, bumper fence posts, flanged fence posts, animal enclosures in the nature of corrals and dog runs. As well as for, Custom manufacture of fences, namely, barricades, basketweave, board on board, decorative, flat top gate, garden, grapestake, hi-low dog ear, lattice/lattice tops, lead free, non-climbable, ornamental, porch rail, privacy, razon ribbon, round rail, round top gate, security, shadow weave, slatted, snow, split rail, stockade and temporary construction, chain link fences, non-metal wire fences, wire mesh/barbed wire fences, vinyl fences, vinyl coated fences, wood fences, PVC fences, picket fences, arbors and trellises made of wood, concrete retaining walls, concrete bollards, guard rails, hand rails, pergolas, bumper fence posts, flanged fence posts, animal enclosures in the nature of corrals and dog runs. Reg. Date: July 5,2011; First Use in Commerce: April 1, 1963.

<u>Copy of the foregoing registration certificate no. 3,988,606 is attached hereto as Exhibit A</u>

23. The trademark registration set forth above is valid, unrevoked and uncancelled. The registration of this mark constitutes prima facie evidence of its validity and conclusive evidence of the Plaintiff's exclusive right to use the ANELLO® Trademark in commerce.

24. The ANELLO® Trademark has been in continuous and exclusive use by Plaintiff and its predecessors since its date of first use in commerce on April 1, 1963.

25. Plaintiff is the sole and exclusive owner of the ANELLO® Trademark as used in connection with Installation of Fences; Maintenance of Fences; and Manufacture of Custom Fences (collectively "Goods and Services) and of all of the goodwill associated therewith.

26. The registration (the "Registration") of the ANELLO® Trademark was duly and lawfully issued, and since its date of grant has been valid and subsisting, in full force and effect, uncancelled and unrevoked.

27. Plaintiff has promoted its Goods and Services under the ANELLO® Trademark through traditional and non-traditional marketing and sales efforts at considerable expense.

28. Plaintiff's advertising expenditures for 2012 were approximately $124,000.00. For the year 2013, Plaintiff will spend approximately $150,000.00 advertising its Goods and Services.

29. Plaintiff has spent a considerable amount of money promoting its business under the ANELLO® Trademark. The ANELLO® Trademark has become associated with the high quality fencing Goods and Services provided by Plaintiff, and has come to be associated in the minds of consumers as Plaintiff's trademark, i.e. it has taken on a secondary meaning in the minds of consumers.

30. By virtue of its high quality fence manufacturing and service standards and the reputation achieved through such standards, Plaintiff has been able to rise as a leader in its market and carve out a significant niche, particularly in the Northern New Jersey fence contracting business. Plaintiff's branded Goods and Services have enjoyed increasing sales on an annual basis and established a strong and valuable reputation in the industry and with consumers. Plaintiff's success is financially considerable.

31. Market confidence in the integrity and superiority of Plaintiff's brand fence manufacturing and services is critical to maintaining Plaintiff's goodwill and increasing sales of such goods and services.

**Defendant Freedom Fence's Conduct**

32. Upon information and belief, Defendant Freedom Fence began its business sometime in 2004.

33. On March 24, 2011, family members common to both the Plaintiff and Defendant Freedom Fence's shareholders opened under the name Anello Bros. Fence Company at 340 State Highway 23 North, Pompton Plains, NJ, just three-quarters (3/4) of a mile away from Plaintiff's showroom.

34. Shortly thereafter, on January April 19, 2011, Plaintiff, filed an Order to Show Cause with Temporary Restraints with the Superior Court of New Jersey, Chancery Division in Morris County under Docket No. C-50-11.

35. The Defendants in that matter included: Vincenzo Anello, Sr.; Emilio Anello, Sr.; Emilio Anello, Jr.; Vincent Anello; and Anello Brothers Fence.

36. The Order, granted and signed by Judge Deanne M. Wilson on April 19, 2011, restrained and enjoined the Defendants in that matter from "Operating, conducting, transacting, advertising and or/otherwise maintaining the business known as Anello Bros. Fence Company, presently located at 340 Route 23 North, Pompton Plains, NJ 07444, or similar name, and/or using the name "Anello" in the operation or advertisement of any fence company".

Copy of signed Order attached hereto as Exhibit B

37. Upon information and belief, some or all of those parties are close family relatives to the shareholders of Defendant Freedom Fence.

7

38. Upon information and belief, Vincenzo Anello, Sr. has previously served as the president of Defendant VCA Sons, Inc d/b/a Freedom Fence.

39. Upon information and belief, Vincenzo Anello, Jr. is presently the president of Defendant VCA Sons, Inc d/b/a Freedom Fence.

40. Upon information and belief, the Vincenzo Anello, Jr. who is now the president of Defendant VCA Sons, Inc d/b/a Freedom Fence. is the son of Vincenzo Anello, Sr., who had served as president of Defendant VCA Sons, Inc d/b/a Freedom Fence in previous years and is the subject of a continuing Temporary Restraining Order.

41. This Order was continued on April 9, 2012 by Judge Deanne M. Wilson and is presently in effect.

See copy of second Order attached hereton as Exhibit C

42. Defendant Freedom Fence is located at 340 State Highway 23 North, Pompton Plains, NJ. This storefront is approximately three-quarters (3/4) of a mile from Plaintiff's location.

43. Upon information and belief, Defendant Freedom Fence has taken over their present location from close family members who are subjects of the Temporary Restraining Order signed by Judge Deanne M. Wilson, and therefore enjoined from operating at that location.

44. Upon information and belief, Defendant Freedom Fence offers nearly identical services and sells a number of products that directly compete with Plaintiff's goods, including residential and commercial fences.

45. Upon information and belief, prior to July 2012, Defendant Freedom Fence did not utilize the "ANELLO" mark in its advertisements or on its vehicles. This practice began in approximately August 2012.

46. Upon information and belief, after August 2012, Defendant Freedom Fence redesigned their printed advertisements to indicate that they are "3rd Generation Family Owned & Operated By Salvatore Anello, Vincenzo Anello, Jr., Christopher Anello and Anthony Anello". This language is featured prominently in the upper right hand corner of the advertisement.

See Freedom Fence advertisement, attached hereto as Exhibit D

47. Upon information and belief Defendant Freedom Fence maintains a fleet of vehicles for use in the course of its business. The "ANELLO" mark is prominently featured on all these vehicles.

48. Upon information and belief Defendant Freedom Fence maintains a website (www.freedomfencenj.com) to promote its goods and services. This website prominently features the "ANELLO" mark on its homepage. More specifically, the website's homepage claims the company is "Family Owned & Operated", then goes on the list the names Sal Anello, Vince Anello, Jr., Chris Anello and Anthony Anello under that heading.

See screen shot of website homepage, attached hereto as Exhibit E

49. By utilizing the designation "ANELLO", Defendant directly incorporates the entire ANELLO® Trademark.

**Defendant Clipper Magazine's Conduct**

50. Defendant Clipper Magazine provides a direct mail marketing outlet for local businesses.

51. Defendant Clipper Magazine states that it is "[D]edicated to winning--and keeping--local and regional consumers".

52. Plaintiff has been advertising with Defendant Clipper Magazine since 2008.

53. Each advertisement placed in Defendant Clipper Magazine's publication costs Plaintiff approximately $3,000.00.

54.     Upon information and belief, Defendant Freedom Fence retained the services of Defendant Clipper Magazine in order to publish advertisements in support of its fence contracting services in northern New Jersey at the cost of $3,000.00 per ad.

See Exhibit D

55.     Upon discovery of this information, Plaintiff issued a cease and desist letter to Defendant Clipper Magazine on April 30, 2013, prior to the publication of any infringing advertisement. This letter detailed the history between the parties and informed Defendant Clipper Magazine of the Temporary Restraining Order that is in place.

56.     Defendant Clipper Magazine willfully disregarded Plaintiff's demand that the infringing advertisement from Freedom Fence be pulled from the publication, as Defendant Clipper Magazine published Defendant Freedom Fence's advertisement with its infringing use of the "ANELLO' mark in its May, 2013 County Junction Edition on page 74. Plaintiff's advertisement, using its duly registered ANELLO® Trademark, can be found on page 19 of the same publication.

57.     Said advertisement by Defendant Freedom Fence specifically states that they are "3rd Generation Family Owned & Operated By Salvatore Anello, Vincenzo Anello, Jr., Christopher Anello and Anthony Anello". This language is featured prominently in the upper right hand corner of the advertisement.

**Defendant Shopper's Guide's  Conduct**

58.     Defendant Shopper's Guide provides a direct mail marketing outlet for local businesses.

59.     Defendant Shopper's Guide states circulates approximately 324,300 copies of it physical editions to households across Bergen, Essex, Morris and Passaic counties of New Jersey.

60. Defendant Shopper's Guide also maintains an online presence that allows consumers to download their publication (www.njshoppersguide.com).

61. Upon information and belief, Defendant Freedom Fence utilized the services of Defendant Shopper's Guide in order to publish advertisements in support of its fence contracting services in northern New Jersey.

62. Defendant Shopper's Guide published the advertisements created by Defendant Freedom Fence which state that they are "3rd Generation Family Owned & Operated By Salvatore Anello, Vincenzo Anello, Jr., Anthony Anello and Christopher". This language is featured prominently in the upper right hand corner of the advertisement.

63. Defendant Shopper's Guide began publishing Defendant Freedom Fence's advertisements, containing their infringing use of the "ANELLO" mark in or around September, 2012.

64. Subsequently, Plaintiff issued a cease and desist letter to Defendant Shopper's Guide on September 6, 2012. This letter detailed the history between the parties and informed Defendant Shopper's Guide of the Temporary Restraining Order that is in place.

65. Defendant Shopper's Guide initially agreed with Plaintiff's contention that the infringing advertisement should be removed, and agreed to do so in a letter dated September 8, 2012. In that letter, Defendant Shopper's Guide agrees "that the following words will be deleted in the Freedom Fence advertisement appearing in the September 2012 issue of the Shopper's Guide: Owned by Salvatore Anello, Vincenzo Anello Jr., Christopher Anello, Anthony Anello".

See copy of letter, attached hereto as Exhibit F

66. Subsequently, Defendant Shopper's Guide reneged on its written pledge to remove the infringing material and has since continued to willfully disregard Plaintiff's demands. The

advertisement by Defendant Freedom Fence, featuring the "ANELLO" mark was published as recently as their May, 2013 edition.

67. These identical advertisements have most recently appeared in three (3) separate editions of Defendant Shopper's Guide May 2013 publication. In the Zone One issue of Defendant Shopper's Guide publication, an advertisement for Defendant Freedom Fence can be found on page three (3). Such advertisement utilizes the "ANELLO" mark.

See copy of advertisement, attached hereto as Exhibit G

68. In the May 2013 Zone Two issue of Defendant Shopper's Guide publication, an advertisement for Defendant Freedom Fence can be found on page three (3). Such advertisement utilizes the "ANELLO" mark.

69. In the May 2013 Zone Eleven issue of Defendant Shopper's Guide publication, an advertisement for Defendant Freedom Fence can be found on page three (3). Such advertisement utilizes the "ANELLO" mark.

70. A search of Defendant Shopper's Guide website for the "ANELLO" mark, brings the user to the advertisement for Defendant Freedom Fence.

### FIRST CLAIM FOR RELIEF
**Infringement of a Registered Trademark Under
Section 32(a) of the Lanham Act,
15 U.S.C. § 1114(1)(a)
Against All Defendants**

71. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

72. The acts of Defendants alleged herein constitute the use in commerce, without the Plaintiff's consent, of a reproduction, copy or colorable imitation of the ANELLO® Trademark

in connection with the sale, offering for sale, distribution or advertising of goods and services, which is likely to cause confusion or mistake, or to deceive consumers and therefore constitutes trademark infringement pursuant to 15 U.S.C. § 1114.

73. Defendants knowingly and willfully used and published, and continue to use and publish the ANELLO® Trademark despite its knowledge of Plaintiff's prior rights thereto.

74. Defendants' use and publication of the ANELLO® Trademark has caused and is likely to cause confusion. Plaintiff has received notification of actual confusion from multiple sources regarding Defendants' use of the ANELLO® Trademark.

75. Plaintiff has been damaged and will continue to be damaged by the Defendants' unauthorized use and publication of the ANELLO® Trademark, which injury consists of, without limitation, monetary loss and irreparable injury to Plaintiff's goodwill.

76. As a direct and foreseeable result of Defendant's conduct, Plaintiff has been injured and has suffered damages in an amount to be determined at trial, but in no event less than $1,000,000, plus punitive damages in the amount of $3,000,000.

### SECOND CLAIM FOR RELIEF
**Misrepresentation, False Designation of Origin, False Advertising, and Unfair Competition Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**
**Against All Defendants**

77. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

78. As a result of Plaintiff's longstanding use of the ANELLO® Trademark, and the fact that it is specifically known for its fence contracting services, the ANELLO® Trademark has achieved substantial goodwill, recognition and reputation in the marketplace.

79. Defendants' unauthorized use and publication of the ANELLO® Trademark constitutes use in interstate commerce of a word, term, name, symbol, or device or a combination thereof,

constituting misrepresentation, false designation of origin, false advertising, and unfair competition that has already and is likely to cause confusion, mistake, or deception as to the affiliation, connection or association of Plaintiff and Defendant Freedom Fence, and further is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval by Plaintiff of Defendants Freedom Fence's use of the ANELLO® Trademark. These acts by the Defendants constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

80. Defendants knowingly and willfully used and published and continue to use and publish the ANELLO® Trademark, despite its knowledge that Plaintiff owns and thereby controls the lawful use of such Trademark.

81. Defendants have solicited business using the ANELLO® Trademark thereby taking unauthorized advantage of Plaintiff's goodwill and trademark rights.

82. Defendants have made material false statements of fact concerning the affiliation, connection with, and sponsorship of Defendant Freedom Fence by Plaintiff.

83. Defendants knew or should have known that their statements concerning affiliation were false and without factual basis, or that the statements were literally true but likely to mislead or confuse consumers.

84. Defendants have also made material false statements of fact concerning Defendant Freedom Fence's reference to itself as "ANELLO" since Defendant Freedom Fence operates in a field where references to "ANELLO" refer exclusively to the Plaintiff.

85. Defendants' false statements have actually deceived numerous third parties or have a tendency to deceive a substantial portion of the marketplace.

86. Defendants' deception is material because it causes, or tends to cause the consuming public to wrongfully believe that Defendant Freedom Fence is affiliated, connected, or sponsored by Plaintiff when they are not.

87. Plaintiff is, and will continue to be, damaged by Defendants' unauthorized use and publication, which injury consists of, without limitation, monetary loss, irreparable injury and erosion of the distinctiveness and goodwill that adheres in the ANELLO ® Trademark.

88. As a direct and foreseeable result of Defendants' conduct, Plaintiff has been injured and has suffered damages in an amount to be determined at trial, but in no event less than $1,000,000, plus punitive damages in the amount of $3,000,000.

## THIRD CLAIM FOR RELIEF
### Contributory and/or Vicarious Trademark Infringement
### (As to Defendants Clipper Magazine and Shopper's Guide)

89. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

90. Defendants Clipper Magazine and Shopper's Guide physical and online publications are engaging in illegal conduct, including, but not limited to: the promotion, advertisement, offer for sale, sale and distribution of Defendant Freedom Fence's infringing advertising and/or marketing materials.

91. Defendants Clipper Magazine and Shopper's Guide have actual knowledge of Freedom Fence's infringing use of the ANELLO® Trademark stemming from cease and desist letters sent to their business offices, which were, unfortunately, willfully disregarded.

92. Defendants Clipper Magazine and Shopper's Guide have materially encouraged, enabled and contributed to the infringing conduct of Defendant Freedom Fence by promoting, marketing and growing the business of Defendant Freedom Fence, allowing the unauthorized display of the

ANELLO® Trademark on their respective websites, and facilitating the misleading consumer association between the ANELLO ® Trademark and Defendant Freedom Fences' business.

**FOURTH CLAIM FOR RELIEF**
Common Law False Advertising and Unfair Competition
Against All Defendants

93. Defendants have made material false statements of fact concerning Defendant Freedom Fence's affiliation, connection with, and sponsorship by Plaintiff.

94. Defendants have also made material false statements of fact concerning Defendant Freedom Fence's reference to itself as "ANELLO" since it operates in a field where references to "ANELLO" are recognized exclusively as Plaintiff.

95. Defendants knew or should have known that their statements concerning ownership were false and without factual basis, or that the statements were literally true but likely to mislead or confuse consumers.

96. Defendants' false statements have actually deceived numerous third parties or have a tendency to deceive a substantial portion of the marketplace.

97. Defendants' deception is material because it causes, or tends to cause the consuming public to wrongfully believe that Defendant Freedom Fence is affiliated, connected, or sponsored by Plaintiff when it is not.

98. Through Defendants' Clipper Magazine and Shopper's Guide's direct mail markenting publications, Defendants Clipper Magazine and Shoppers Guide have caused false statements to enter interstate commerce.

99. Through their advertising, signage, vehicles and website, Defendant Freedom Fence has caused false statements to enter interstate commerce.

100. Defendants' false advertising violates the common law.

101. Plaintiff has been damaged by Defendants willful misconduct in an amount according to proof.

## FIFTH CLAIM FOR RELIEF
### Unfair Competition Under N.J. Stat. § 56:4-1
### Against All Defendants

102. Plaintiff incorporates the preceding paragraphs as if fully set forth here.

103. Plaintiff has built up valuable goodwill in its name and logo.

104. Through the above-described acts, Defendants have willfully and knowingly engaged in unfair acts or practices and unfair methods of competition, including the bad faith usage of the Plaintiff's name and goodwill.

105. These continuing practices are anti-competitive, commercially immoral, and unethical and have caused and threaten to cause substantial additional injury to Plaintiff. As a result of such violations, Defendants have gained and will continue to gain unjust profits and undeserved goodwill.

106. Defendants Clipper Magazine and Shopper's Guide knew that the repetitive and continuous appearnce of Plaintiff's name and ANELLO® Trademark in their publications, via published advertisements for Defendant Freedom Fence had misled and will continue to mislead the public into assuming a connection between Plaintiff and Defendant Freedom Fence.

107. Defendant Freedom Fence knew that the repetitive and continuous use of Plaintiff's name and ANELLO® Trademark and on their signage, vehicles and website had misled and will continue to mislead the public into assuming a connection between Plaintiff and Defendant Freedom Fence.

108. The acts of Defendants have been and continue to be in bad faith and conscience and in deliberate disregard of Plaintiff's rights.

109. The acts of Defendants have been and continue to be performed with the intention of depriving the Plaintiff of rightful moneys.

110. Plaintiff has suffered and continues to suffer irreparable harm as a result of Defendants' action.

111. As a direct and foreseeable result of Defendant's conduct, Plaintiff has been injured and has suffered damages in an amount to be determined at trial, but in no event less than $1,000,000, plus punitive damages in the amount of $3,000,000.

### SIXTH CLAIM FOR RELIEF
**Unjust Enrichment**
**Against All Defendants**

112. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

113. Defendants have unfairly and unlawfully used Plaintiff's Trademark for Defendants' own enrichment. Defendant Freedom Fence traded and continues to trade on Plaintiff's good name and good will, and it does so knowing that it has no right to the ANELLO® Trademark. Defendants Clipper Magazine and Shopper's Guide profited, and continue to profit from Defendant Freedom Fence's publication of advertisements in their publications.

114. If Defendants are permitted to continue to exercise claims of ownership over Plaintiff's ANELLO® Trademark or to interfere with Plaintiff's lawful claims of ownership over its trademark, Defendants will be unjustly enriched at Plaintiff's expense.

115. As a direct and foreseeable result of Defendants' conduct, Plaintiff has been injured and has suffered damages in an amount to be determined at trial, but in no event less than $1,000,000, plus punitive damages in the amount of $3,000,000.

### SEVENTH CLAIM FOR RELIEF
### Tortious Interference with Prospective Economic
### Advantage Against All Defendants

116.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

117.   With knowledge of Plaintiff's Trademarks and related information, and the existence of relationships between customers and the Plaintiff, Defendants have tortuously interfered with Plaintiff's prospective economic advantage.

118.   The Defendants have wrongfully used the Plaintiff's trademarks, reputation, and goodwill to unfairly compete, to interfere with the Plaintiff's relationships with its customers and consumers, and to deprive the Plaintiff of sales and business that would have been available to it.

119.   These acts were committed with the intent to injure and Plaintiff's current and future business expectancies with customers and consumers.

**WHEREFORE,** Plaintiff prays for judgment against the Defendant as follows:

I.   That Plaintiff obtains and/or recovers:

1.   An accounting and restitution of any profits the Defendant has gained through the use of the Plaintiff's ANELLO ® Trademark, pursuant to 15 U.S.C. § 1117;

2.   All compensatory damages pled and proved in an amount to be determined at trial, but in no event less than $1,000,000 pursuant to 15 U.S.C. § 1117;

3.   Attorneys' fees and costs in the suit herein;

4.   Damages for willful infringement pursuant to Title 15 U.S.C. § 1117 plus punitive damages in the amount of $3,000,000;

5.   Such other and further relief as this Court may seem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims for relief alleged herein on which Plaintiff has a right to trial by jury.


THE INGBER LAW FIRM

Dated:  May 14, 2013
Millburn, New Jersey

                                          s/Mark J. Ingber_____
                                          By: Mark J. Ingber, Esq.
                                          374 Millburn Avenue, Suite 301
                                          Millburn, New Jersey 07041
                                          Tel: (973) 921-0080
                                          Ingber.law@verizon.net
                                          Attorneys for Plaintiff

## L.CIV.R. 11.2 CERTIFICATION

The matter in controversy is not the subject of any other action pending in any other Court, or any pending arbitration or administrative proceeding.


                                          s/Mark J. Ingber_____
                                          Mark J. Ingber, Esq.