# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANELLO FENCE, LLC | Civ. A. No.: |
| Plaintiff, | 2:13−cv−03074−CCC−JBC |
| v. | |
| VCA SONS, INC., d/b/a FREEDOM FENCE, et al. | |
| Defendant, | |
| v. | |
| ANELLO FENCE, LLC | |
| Counterclaim Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION IN LIMINE TO PRECLUDE
THE EXPERT TESTIMONY OF GARY B. ROSEN**

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES……………………………………….. ii

PRELIMINARY STATEMENT…………………………………… 1

STATEMENT OF FACTS………………………………………… 2

LEGAL ARGUMENT…………………………………………… 3

    I.  Mr. Rosen's Damages Opinion More Than Exceeds The
        Threshold Standard For Admissibility Under F.R.E. 702……….. 3

        A. Defendant Challenges Mr. Rosen's Conclusions, Not His
           Methodology, So His Testimony Is Admissible And His
           Conclusions Subject To The Trier Of Fact…………………… 4

        B. Defendant's Argument Regarding The Yardstick Approach
           Is Inapplicable…………………………………………… 9

CONCLUSION……………………………………………… 11

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Blood Reagents Antitrust Litig.*,
  No. 09-2081, 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015) ............................ 9-10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)...........................................................................................4, 9

*Eleven Line, Inc. v. North Texas State Soccer Ass'n, Inc.*,
  213 F.3d 198 (5th Cir.2000) ...............................................................................10

*Heller v. Shaw Indus., Inc.*,
  167 F.3d 146 (3d Cir. 1999) ............................................................................ 4-5

*Kannankeril v. Terminix International Inc.*,
  128 F.3d 802 (3d Cir. 1997) ............................................................................6, 8

*Loeffel Steel Products, Inc. v. Delta Brands, Inc.*,
  387 F. Supp. 2d 794 (N.D. Ill. 2005).................................................................10

*Main St. Mortg., Inc. v. Main St. Bancorp., Inc.*,
  158 F. Supp. 2d 510 (E.D. Pa. 2001) ............................................................... 6-9

*In re Paoli Railroad Yard PCB Litigation*,
  35 F.3d 717 (3d Cir. 1994), *cert. denied*, 513 U.S. 1190 (1995) ........................5

*In re TMI Litig.*,
  193 F.3d 613 (3d Cir. 1999), *amended*, 199 F.3d 158(3d Cir. 2000)........... 5-6, 8

**Other Authorities**

Rule 702 ..............................................................................................................4, 7

Plaintiff, Anello Fence, LLC ("Plaintiff"), respectfully submits this opposition to Defendant's, VCA Sons, Inc. d/b/a Freedom Fence ("Defendant"), Motion in Limine to Preclude the Expert Testimony of Gary B. Rosen (the "Motion").

## PRELIMINARY STATEMENT

Defendant's Motion is nothing more than a blatant attempt to overcome the fact that it failed to secure a rebuttal expert.  Defendant's Motion does not challenge the expert qualifications of Mr. Rosen or his methodology.  Rather, Defendant seeks to challenge Mr. Rosen's conclusions, a factual issue for determination by the jury.

In support of this argument, Defendant asserts that Mr. Rosen relies on a "yardstick" analysis akin that used in antitrust case despite the fact that Mr. Rosen unequivocally did not do so.  The yardstick analysis offered by Defendant is used in antitrust cases where the expert must choose a comparable market, product, costs, and demand to determine the effect of anti-competitive conduct.

Here, by contrast, Mr. Rosen performed a comparison of Plaintiff and Defendant's growth or decline in the same time period and geographic area as opposed to the average growth in the fence industry during that same time period in the same region, all as established by a generally accepted publication.  This is not a "yardstick" analysis, but rather a direct -- and fully appropriate -- comparison of Plaintiff and Defendant's revenues.

1

## STATEMENT OF FACTS

Mr. Rosen was engaged to calculate lost profits between June 27, 2012 and December 31, 2016. Mr. Rosen concluded that Defendant's revenue increased following its initial act of infringement as a result of the infringement. *See* Declaration of Jay R. McDaniel, Esq., dated March 26, 2018 ("McDaniel Decl."), **Exhibit C** at 21:13-21. In reaching his conclusion, Mr. Rosen looked "at the data of [Plaintiff and Defendant] that were in the same geographic area that were operating similar-type operations and businesses." McDaniel Decl., **Exhibit C** at 21:22 – 22:3. He further noted that Plaintiff and Defendant had a "similar customer base." McDaniel Decl., **Exhibit C** at 44:5-7. Mr. Rosen "compared [Plaintiff's] results with Freedom Fence's taking into consideration of the market growth." McDaniel Decl., **Exhibit C** at 25:9-11. For determining the market growth, Mr. Rosen relied upon the IBIS World Industry report 23899C, fence construction in the U.S., December 2016, ("IBIS report"), which is a national report with regional data as well. *See* McDaniel Decl., **Exhibit C** at 18:10-19:13. More specifically:

> What I did on Exhibit 2A – I – 2A.1, I compared the revenues post-ad between July and December of 2011 and 2012, it came up with an increase in revenues of 22.87%, and that's on 2A.1. I then took that number and then on Exhibit 2A, because that was my base period, I reduced it by the change in total revenues in the industry and that's where the IBIS report comes into consideration, because what we're saying is embedded within the industry is growth of the industry itself.

2

> So I subtracted out the growth that would have occurred naturally and organically within the industry based upon the IBIS report, and then I utilized that number, which is the trademark infringement percentage on Exhibit 2.
>
> … I based my damages that the delta of Freedom Fence grew by 22.87% for each of the subsequent years minus the organic growth that occurred within those years.

McDaniel Decl., **Exhibit C** at 26:3-18; 28:15-18.

Mr. Rosen further testified that he utilized a generally accepted industry methodology and reports in conducting the lost profits analysis. *See* McDaniel Decl., **Exhibit C** at 92:22-25; 93:2-5. Finally, Mr. Rosen testified that he had sufficient information regarding both Plaintiff and Defendant in order to reach a lost profits calculation with reasonable certainty. *See* McDaniel Decl., **Exhibit C** at 93:6-10.

## LEGAL ARGUMENT

### I.    Mr. Rosen's Damages Opinion More Than Exceeds The Threshold Standard For Admissibility Under F.R.E. 702.

Defendant's arguments that Mr. Rosen's opinion is not reliable enough to be admissible, *see* Brief in Support of Motion to Bar, dated March 26, 2018, Docket No. 135-1 ("Br."), at 7-8, is not only factually incorrect, it is legally unsupported. Defendant's argument goes to the weight to be afforded to Mr. Rosen's conclusions by a jury, not to its admissibility Defendant is not challenging Mr. Rosen's qualification as an expert in the calculation of lost profits or the reliability and

3

acceptability of the methodology he used, but rather his conclusions.  However, Defendant chose not to retain an expert to rebut Mr. Rosen's conclusions, so it now seeks exclude his testimony entirely.

> ### A.   Defendant Challenges Mr. Rosen's Conclusions, Not His Methodology, So His Testimony Is Admissible And His Conclusions Subject To The Trier Of Fact.

Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise.

F.R.E. 702.  "Relying on the language of Rule 702 and the liberal thrust of the Federal Rules of Evidence, the Supreme Court held in *Daubert* that expert testimony need be based only on a reliable and scientifically valid methodology that fits with the facts of a case."  *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3d Cir. 1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-93 (1993)).

In *Daubert,* the Court found that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence " *Daubert*, 509 U.S. at 596.  Thus, "an expert opinion must be based on reliable methodology and must reliably flow from that methodology and the facts at issue --

4

but it need not be so persuasive as to meet a party's burden of proof or even necessarily its burden of production." *Heller*, 167 F.3d at 152.

"[T]he standard for determining reliability 'is not that high.'" *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) (quoting *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 745 (3d Cir. 1994), *cert. denied*, 513 U.S. 1190 (1995)("*Paoli II*")). "Thus, plaintiffs do not 'have to prove their case twice -- they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.'" *In re TMI Litig.*, 193 F.3d at 665 (quoting *Paoli II*, 35 F.3d at 744).

As the Third Circuit explained in *Paoli II*:

> The grounds for the expert's opinion merely have to be good, they do not have to be perfect. The judge might think that there are good grounds for an expert's conclusion even if the judge thinks that there are better grounds for some alternative conclusion, and even if the judge thinks that a scientist's methodology has some flaws such that if they had been corrected, the scientist would have reached a different result.

*Paoli II*, 35 F.3d at 744.  Thus, the Third Circuit held that:

> the primary limitation on the judge's admissibility determinations is that the judge should not exclude evidence simply because he or she thinks that there is a flaw in the expert's investigative process which renders the expert's conclusions incorrect. The judge should only exclude the evidence if the flaw is large enough that the expert lacks the "good grounds" for his or her conclusions.

*Id.* at 746.

5

Accordingly, "[t]he test of admissibility is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research. Rather, the test is whether the 'particular opinion is based on valid reasoning and reliable methodology.'" *In re TMI Litig.*, 193 F.3d at 665 (quoting *Kannankeril v. Terminix International Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)).   The test for admissibility "focuses on principles and methodology, not on the conclusions generated by the principles and methodology." *Id.* (citing *Kannankeril*, 128 F.3d at 806).   "The analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination." *Kannankeril*, 128 F.3d at 807.

In a very instructive case, *Main St. Mortg., Inc. v. Main St. Bancorp., Inc.*, 158 F. Supp. 2d 510 (E.D. Pa. 2001), the defendant sought to bar the plaintiff's expert's lost profits calculation on the grounds that the conclusions represented "possibilities" and that the expert "made unreasonable assumptions. *Id.* at 515.   In reaching his conclusions, the expert:

> looked at Plaintiff's earnings before the alleged infringing event. He attempted to calculate the difference between what Plaintiff's earnings would have been had the Defendant not engaged in the allegedly inappropriate conduct and Plaintiff's actual earnings, from 1998 to 2000. He then projected what Plaintiff's earnings would have been after December 31, 2000, absent the challenged conduct. Since Plaintiff may be entitled to Defendant's profits, Biddick also calculated these.

*Id.* at 514.

The *Main St. Mortg., Inc*. Court rejected the challenge and permitted the expert's testimony.  There, as here, the defendant did not challenge the data used by the expert in forming his opinions, but rather the "the reliability of the proposed testimony on the grounds that it contains several errors and omissions."  *Id.* Nevertheless, the court found that the expert's methodology was "sufficiently reliable to be admissible under Rule 702." *Id.* at 515.  In so holding, the court noted that "[l]ost profits are not as easy to quantify as actual out of pocket expenses" and that "[s]uch calculation requires one to make a few assumptions." *Id.*  The court found that "[t]his does not render all such calculations unreliable." *Id.*

In reviewing the expert's opinion, the court also found that the expert "had to make some assumptions and he looked at various possibilities.  The fact that other methods for calculating lost profits in this type of case may produce different results, does not undermine [the expert's] analysis." *Id.*  Thus, the court permitted the expert's testimony and found that "[w]hether the decline in Plaintiff's profits is attributable to the Defendant or some other factors is a factual question, not an issue of liability" and is within the province of the jury. *Id.*

Here, in preparing his report and comparing the revenues and profits of Plaintiff and Defendant, Mr. Rosen relied upon Defendant's tax returns, bank records for Defendant, individual tax returns, Plaintiff's tax returns, and Plaintiff's general ledger. *See* McDaniel Decl., **Exhibit A** at 19.  Mr. Rosen further reviewed

the IBIS report to gather information related to the national and regional fencing market.  *See* McDaniel Decl., **Exhibit C** at 18:10-19:13.  Mr. Rosen further testified that he examined Plaintiff's and Defendant's revenues pre and post-infringement and, using the general fencing market trends in the IBIS report, was able to calculate the percentage of revenue attributable to the trademark infringement as opposed to the average gains in the fence industry generally.  McDaniel Decl., **Exhibit C** at 18:10-19:13; 25:9-11; 26:3-18; 28:15-18.  Mr. Rosen also testified that the data and reports he utilized, and the methodology he used to conduct his analysis, were sufficient and generally accepted in the industry.  *See* McDaniel Decl., **Exhibit C** at 92:22-93:10.

Defendant does not challenge the data and methodology used by Mr. Rosen, but simply argues that he should have conducted additional research.  *See* Br. at 6-7.  However, "[t]he test of admissibility is not whether a particular scientific opinion has the best foundation, ***or even whether the opinion is supported by the best methodology or unassailable research***. Rather, the test is whether the 'particular opinion is based on valid reasoning and reliable methodology.'"  *In re TMI Litig.*, 193 F.3d at 665 (emphasis added) (quoting *Kannankeril*, 128 F.3d at 806).

Thus, this case falls squarely in line with *Main St. Mortg., Inc.*, and because "[l]ost profits are not as east to quantify as actual out of pocket expenses" assumptions made by Mr. Rosen do not render his opinion unreliable.  *Main St.*

8

*Mortg., Inc.*, 158 F. Supp. 2d at 515.   Accordingly, "[w]hether the decline in Plaintiff's profits is attributable to the Defendant or some other factors is a factual question, not an issue of liability" and is within the province of the jury.  *Id.*

### B. Defendant's Argument Regarding The Yardstick Approach Is Inapplicable.

Defendant argues that Mr. Rosen "relies on a yardstick analysis, but fails to establish comparability either (a) between local market conditions and the national report from which he seeks to extrapolate and (b) between the business of Plaintiff and Defendant."  *See* Br. at 6.  However, in reciting the contours of a yardstick analysis, Defendant relies upon a methodology utilized in antitrust actions where the expert is tasked with choosing a product or market (a yardstick) comparable to that involved in the litigation, where the entire issue is the lack of a comparable competitor.  That is completely irrelevant to this action, as this case involves a direct comparison between the performances of the two actual parties, and does not require the creation of a "yardstick" against which to measure Plaintiff's potential profits.

Even if the Court were to consider the yardstick analysis as argued by Defendant, Mr. Rosen's opinion more than adequately satisfies the comparability requirement.  "Under *Daubert*, 'exact correlation is not necessary...the products need only be fair congeners.'" *In re Blood Reagents Antitrust Litig.*, No. 09-2081, 2015

WL 6123211, at *21 (E.D. Pa. Oct. 19, 2015) (quoting *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 812 (N.D. Ill. 2005)).

Generally, a proposed yardstick is only inadmissible if "the expert testimony is so deficient that the 'comparison is manifestly unreliable and cannot logically advance a material aspect of the proposing party's case.'" *Id.* at *22 (quoting *Loeffel Steel Products, Inc.*, 387 F. Supp. 2d at 812). "This generally occurs when an expert has failed to perform any substantive analysis of those factors most relevant to comparability." *Id.* (citing *Loeffel Steel Products, Inc.*, 387 F. Supp. at 794 (rejecting testimony on proposed yardstick where expert "admitted he knew nothing about the respective geographic or product markets or customer bases of the eight companies or of the quality of service or any other relevant factor that would bear upon the question of comparability"); *Eleven Line, Inc. v. North Texas State Soccer Ass'n, Inc.*, 213 F.3d 198 (5th Cir.2000) (rejecting different soccer arenas as comparable businesses at summary judgment where no evidence offered regarding geographic location, size, or attractiveness of facilities, size and type of the market served, relative costs of operation, amounts charged, or the number of years facilities were run)).

Here, Mr. Rosen was aware that Plaintiff and Defendant are engaged in the same business, in the same geographic area, and have a similar customer base. *See* McDaniel Decl., **Exhibit C** at 21:22 – 22:3; 44:5-7. Thus, there is no question that

10

a comparative analysis between Plaintiff and Defendant is appropriate.  Moreover, in determining market trends in the fencing industry, and applying the parties' own data to determine their expected annual revenue increases, Mr. Rosen utilized the IBIS report, which contains both national and regional data.  *See* McDaniel Decl., **Exhibit C** at 18:10-19:13.  Thus, even if the yardstick analysis were applicable, Mr. Rosen's opinion more than adequately satisfies the comparability requirement.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety, and grant such, other, further, and additional relief as the Court deems just and proper, including reasonable attorney's fees and costs.

Dated:  Woodland Park, New Jersey      Respectfully submitted,
        May 7, 2018             ANSELL GRIMM & AARON, P.C.

                           By:     *s/ Michael H. Ansell*_____
                                  Joshua S. Bauchner, Esq.
                                  Michael H. Ansell, Esq.
                                  365 Rifle Camp Road
                                  Woodland Park, New Jersey 07424
                                  Tel: (973) 247-9000
                                  Fax: (973) 807-1835

                                  *Attorneys for Plaintiff*